Thomas RETZLAFF, Appellant,

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellee.

No. 01–02–00437–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 18, 2003.

Rehearing Overruled March 4, 2004.

Thomas C. Retzlaff, Beeville, pro se.

David Harris, Assistant Attorney General, Austin, for appellee.

Panel consists of Justices NUCHIA, HIGLEY and HEDGES *.

## OPINION ON MOTION
## FOR REHEARING

LAURA C. HIGLEY, Justice.

Appellant, Thomas Retzlaff, has filed a motion for rehearing and motion for rehearing en banc. We deny rehearing, but withdraw our opinion and judgment of October 23, 2003, and issue this new opinion in its stead. Accordingly, we deny the motion for rehearing en banc as moot.[1]

---

\* Justice Adele Hedges, who became Chief Justice of the Fourteenth Court of Appeals on December 8, 2003, continues to sit by assignment for the disposition of this case, which was considered on September 22, 2003.

1. *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 272 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

Appellant, an inmate in the custody of Texas Department of Criminal Justice Institutional Division (TDCJ), appellee, sued TDCJ for personal injuries, conversion, unlawful takings, civil rights violations under 42 U.S.C. section 1983, breach of fiduciary duty, theft by a public servant, negligence, and gross negligence. Appellant also named Mack DeSha, Jr. and John and/or Jane Doe, Unknown Defendant(s), as co-defendants, asserting similar claims. The trial court granted summary judgment for TDCJ and severed the other defendants, making the judgment final. In four points of error, appellant asserts that the trial court erred in (1) granting summary judgment on all appellant's claims; (2) granting more summary judgment relief than was requested; (3) failing to rule on appellant's summary judgment objections; and (4) denying appellant's motion to continue the summary judgment hearing.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant is an inmate in the custody of TDCJ. On July 20, 2001, appellant sued TDCJ for damages arising from two unrelated occurrences.

### A. THE REC YARD INCIDENT

On July 17, 1999, appellant was injured while playing "ragball" in TDCJ's prison recreation yard ("rec yard"). While engaged in this prison derivative of baseball, appellant ran and fell into a section of the prison's perimeter security fence that was constructed of razor wire. TDCJ had intentionally installed razor wire on the portion of the fence into which appellant fell, because that portion had been identified as a potential area of escape. The razor wire was used to enhance security by adding an additional deterrent.

Generally, inmates were given verbal and written warnings that they were proscribed from coming into contact with the perimeter fence. However, appellant was not specifically warned about the presence of razor wire at the location where he incurred the injuries. Relatedly, TDCJ did not post a barrier or sign warning inmates that the perimeter fence was constructed of razor wire at that location.

### B. THE MISSING MONEY

Appellant claims that a series of unauthorized withdrawals totaling approximately $700 were made from his inmate account between April 1998 and May 31, 2001. Appellant asserts that these withdrawals were made by Mack DeSha, Jr. or John and/or Jane Doe, Unknown Defendants, employees of TDCJ.

Appellant concedes that withdrawals were regularly made from his account in repayment of indigent supplies received by appellant from the prison library. Appellant further acknowledges that he received indigent supplies and that TDCJ had the right to debit his inmate account for such supplies. However, appellant asserts that the amounts withdrawn from his account were disproportionate to the value of the supplies received. Therefore, appellant claims that TDCJ, through either Mack DeSha, Jr. or another, unknown employee, either stole or lost funds from the account.

### C. THE SUMMARY JUDGMENT PROCEEDINGS

On August 15, 2001, TDCJ requested summary judgment by filing a pleading designated "Defendant Texas Department of Criminal Justice's Motion for Summary Judgment, Objections to Plaintiff's Discovery, and Motion for Protective Order" (hereinafter "original MSJ"). In its original MSJ, TDCJ asserted that all appellant's claims were barred by the applicable statutes of limitations. Later, on August

29, 2001, TDCJ filed a pleading designated "Defendant Texas Department of Criminal Justice's Supplement to It's Motion for Summary Judgment" (hereinafter "first supplemental MSJ"), which added sovereign immunity as a ground for summary judgment.

On September 21, 2001, the trial court held a pre-trial hearing at which it intended to hear arguments concerning, *inter alia,* TDCJ's request for summary judgment. Prior to appearing for the hearing, TDCJ was under the mistaken belief that appellant had filed suit as an indigent. Therefore, before TDCJ's motion for summary judgment was addressed, TDCJ asked the court to postpone the hearing to give TDCJ additional time to "submit [its] motion one more time and address the facts as they are now as opposed to what [it] perceived them to be." The court granted TDCJ 14 days to resubmit its motion. The court also gave appellant an additional 14 days to respond. The court then stated that it would decide the matter on submission.

On October 10, 2001, TDCJ filed a pleading designated "Defendant Texas Department of Criminal Justice's Second Supplement to Its Motion for Summary Judgment" (hereinafter "second supplemental MSJ"). TDCJ's second supplemental MSJ was, in fact, a completely rewritten pleading that reasserted TDCJ's prior defenses and added as grounds the assertion that TDCJ owed no duty to appellant in relation to his tort claims, and that the trial court lacked jurisdiction over appellant's section 1983 claim. Appellant filed his response to TDCJ's second supplemental MSJ on October 23, 2001. In appellant's response, he made a number of objections concerning TDCJ's second supplemental MSJ; however, he never excepted to the title used for that pleading. The trial court did not rule on any of the objections in appellant's response, and ap-

pellant failed to obtain a refusal to rule from the court.

On December 7, 2001, the trial court held a proceeding wherein it anticipated entering summary judgment for TDCJ. Appellant appeared at this proceeding and again made a number of objections concerning TDCJ's second supplemental MSJ. Again, appellant failed to except to the title used for TDCJ's second supplemental MSJ; and again, he failed to obtain a ruling on his objections. However, the trial court did take additional time to consider appellant's objections before entering judgment. In entering judgment, the trial court stated that it considered, "the argument and pleadings of the parties filed herein."

On January 2, 2002, without stating the grounds upon which it reached its decision, the trial court granted summary judgment in favor of TDCJ on all appellant's claims.

## PROPER SCOPE OF SUMMARY JUDGMENT

In his second point of error, appellant claims that the trial court committed error in granting summary judgment for TDCJ on those claims not addressed in TDCJ's original MSJ. Appellant's argument is as follows: "the trial court's summary judgment order specifically stated that it was *only* granting appellee's **original** motion for summary judgment-not appellee's original *and* supplemental motions for summary judgment!!" (emphasis in original). We interpret this argument to mean that, because the trial court's judgment only referred to TDCJ's original MSJ, it did not consider either of TDCJ's "supplemental" motions for summary judgment. We also take this argument to mean that the trial court's failure to consider TDCJ's "supplemental" motions limited the possible grounds upon which summary judgment could be based to those expressly present-

ed in the motion considered by the court (*i.e.*, TDCJ's original MSJ). Thus, according to appellant's argument, the scope of the summary judgment is limited to the personal injury and conversion claims addressed in TDCJ's original MSJ.

We disagree with appellant's reasoning.

## A. THE MISTITLED PLEADING

■ A supplemental pleading may only be used to respond to the last preceding pleading filed by another party; it may not be used to amend one's own pleading.[2] TEX.R. CIV. P. 69. Consequently, a supplemental pleading is not an appropriate method of stating a new cause of action or an additional affirmative defense. *See Wegener v. Erdman*, 154 S.W.2d 969, 970 (Tex.Civ.App.-Fort Worth 1941, no writ). The appropriate method by which to add a cause of action or affirmative defense is to amend the deficient pleading. TEX.R. CIV. P. 62.

■ Relatedly, when justice requires, the court must treat an improperly designated pleading as if it had been properly designated. TEX.R. CIV. P. 71. Therefore, when a party seeks to amend its pleading but mistakenly designates the new pleading a supplemental pleading, the mistitled pleading will be considered an amendment to the original pleading. *Id.; Glenn v. Dallas County Bois D'Arc Island Levee Dist.*, 114 Tex. 325, 268 S.W. 452, 453 (1925); *Hawkins v. Anderson*, 672 S.W.2d 293, 295 (Tex.App.-Dallas 1984, no writ). Further, any objection to a mistitled or otherwise defective pleading must be made in writing before the judgment is signed or the objection is deemed waived. TEX.R. CIV. P. 90.

■ In the instant case, it is obvious from TDCJ's second supplemental MSJ that TDCJ meant, by that pleading, to amend its original MSJ. TDCJ's original MSJ merely asserted that appellant's claims were barred by the applicable statutes of limitations; the second supplemental MSJ was an entirely rewritten pleading that restated the statute of limitations defense while asserting additional defenses and jurisdictional claims.

Because TDCJ merely mistitled its second supplemental MSJ and because appellant did not except to the misnomer, it is proper to consider TDCJ's second supplemental MSJ as an amendment to its original MSJ.

## B. THE EFFECT OF THE MISTITLED PLEADING

■ When a party files an entirely rewritten pleading in amendment of a prior pleading, the latter pleading supersedes the original, making the original a nullity unless the latter pleading is for some reason stricken. TEX.R. CIV. P. 65. Thus, an amended motion for summary judgment completely supersedes an original motion for summary judgment and becomes the controlling petition. *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 793 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

TDCJ filed its second supplemental MSJ on October 10, 2001. The judgment was signed and rendered on January 2, 2002. The court, therefore, had the mislabeled pleading on file and available for its consideration prior to rendering its judgment. The judgment indicates that the court considered "the argument and pleadings of

---

2. "The object of an amendment, as contradistinguished from a supplemental petition or answer, is to add something to, or withdraw something from, that which has been previously pleaded so as to perfect that which is or may be deficient, or to correct that which has been incorrectly stated by the party making the amendment, or to plead new matter, additional to that formerly pleaded by the amending party, which constitutes an additional claim or defense permissible to the suit." TEX.R. CIV. P. 62.

the parties filed herein." We take this statement to mean that the court considered all pleadings filed prior to the date of the judgment, including TDCJ's second supplemental MSJ.

The only proper consideration of TDCJ's second supplemental MSJ was as an amended motion for summary judgment. As an amended pleading, TDCJ's second supplemental MSJ superseded all prior motions for summary judgment. Consequently, it was the controlling motion upon which summary judgment was granted.

### C. THE PROPER SCOPE OF SUMMARY JUDGMENT

■ The trial court was, indeed, limited to the grounds expressly presented in the motion before it. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). However, TDCJ's second supplemental MSJ was the controlling motion before the court. Regardless of what pleading the trial court referred to in the judgment, it is clear that this motion was the one upon which summary judgment was granted. Because TDCJ's second supplemental MSJ asserted grounds for and requested summary judgment of all appellant's claims, we hold that the trial court's judgment did not grant more relief than was requested by TDCJ.

Appellant's second point of error is overruled.

## PROPRIETY OF SUMMARY JUDGMENT

In his first point of error, appellant asserts that the trial court erred in granting summary judgment because TDCJ failed to meet its summary judgment burden as to any of appellant's claims.

### A. STANDARD OF REVIEW

A traditional summary judgment under Rule 166a(c) is proper only when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). As movant, the defendant is entitled to summary judgment if the evidence disproves, as a matter of law, at least one element of each of the plaintiff's causes of action or conclusively establishes each element of an affirmative defense. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996). In reviewing a summary judgment, we indulge every reasonable inference in favor of the non-movant and resolve any doubts in his favor. *Johnson*, 891 S.W.2d at 644; *Lawson v. B Four Corp.*, 888 S.W.2d 31, 33 (Tex. App.-Houston [1st Dist.] 1994, writ denied). We also take all evidence favorable to the non-movant as true. *Johnson*, 891 S.W.2d at 644; *Lawson*, 888 S.W.2d at 33.

■ When there are multiple grounds for summary judgment and the trial court does not state the ground or grounds on which it based its ruling, an appellant must negate each ground on which summary judgment may have been rendered. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex.1993). Otherwise, this Court must uphold the summary judgment. *Id.*

### B. SUMMARY JUDGMENT ON THE REC YARD CLAIMS

Appellant's personal injuries occurred when he ran and fell into razor wire that was intentionally placed along a perimeter security fence to dissuade inmates from attempting an escape through that portion of the fence. Appellant claims that the presence of the razor wire constituted either a premise defect or a special defect for which TDCJ is liable in tort. Appellant also claims that TDCJ was negligent or grossly negligent in (1) constructing the portion of the fence, into which he fell, out of razor wire, and (2) failing to properly

warn him of the presence of the razor wire. To invoke the trial court's jurisdiction, appellant brought these claims under the Texas Tort Claims Act ("TTCA"). TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). In response to appellant's claims, TDCJ asserted that it was immune to suit because appellant's claims did not fall under the TTCA. TDCJ also asserted that, even if appellants claims did fall under the TTCA, TDCJ owed no duty to appellant in relation to his negligence claims.

### 1. Sovereign Immunity

■■■ The State of Texas, its agencies, and officers are immune from suit unless the State, through its legislature, consents to being sued. *Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853–54 (Tex.2002). The burden is on the plaintiff to show consent either by reference to a statute or to express legislative permission. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). In the absence of such consent, the courts lack jurisdiction. *Id.* Accordingly, the proper vehicle by which the State should seek summary disposition of a claim for which consent has not been given is by a plea to the jurisdiction. *Id.* However, this Court has accepted immunity claims submitted as affirmative defenses in motions for summary judgment. *Cobb v. Tex. Dep't of Crim. Justice*, 965 S.W.2d 59, 61 (Tex.App.-Houston [1st Dist.] 1998, no pet.).

Because appellant did not bring the current suit under an express grant of legislative permission, this Court must determine whether his claims fall within a statutory waiver of sovereign immunity. *Jones*, 8 S.W.3d at 638. In Texas, sovereign immunity has been waived by the TTCA in certain limited circumstances. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021.

The TTCA states as follows:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id.* Since appellant does not assert that his personal injuries were caused by the use of a motor-driven vehicle or motor-driven equipment, he must show that his claims fall under the second subsection of the TTCA.

#### a. Appellant's Premise/Special Defect Theories

The TTCA waives the State's sovereign immunity for injuries caused by a condition of real property if the governmental unit would, were it a private person, be liable under Texas law. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2); *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex.1997); *Cobb*, 965 S.W.2d at 62. Under the TTCA, the State's standard of care is dependent on whether the claim arises from an ordinary "premise defect" or a "special defect." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022 (Vernon 1997); *Roberts*, 946 S.W.2d at 843.

Because appellant asserted that the razor wire constituted both an ordinary

premise defect and a special defect, we must address both.

### i) ordinary premise defect

■ If an ordinary premise defect causes an injury, the governmental entity owes the claimant the same duty that a private landowner owes a licensee. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022; *Roberts,* 946 S.W.2d at 843. This duty entails a responsibility not to injure the licensee through willful, wanton, or grossly negligent conduct. *State Dep't of Highways v. Payne,* 838 S.W.2d 235, 237 (Tex. 1992). It also entails a responsibility to either warn the licensee or to make the condition reasonably safe if the landowner has knowledge of a dangerous condition and the licensee does not. *Id.*

"Premise defect" is not defined by the TTCA. Therefore, to determine if a condition falls under the definition of premise defect, we look to the ordinary meaning of the words. *Cobb,* 965 S.W.2d at 62. We define "premises" as "a building, its parts, grounds, and appurtenances." *Id.* We define "defect" as "an imperfection, shortcoming, or 'want of something necessary for completion.'" *Id.* (quoting *Billstrom v. Mem'l Med. Ctr.,* 598 S.W.2d 642, 646 (Tex.Civ.App.-Corpus Christi 1980, no writ)).

Appellant contends that he presented summary judgment evidence showing that the razor wire had fallen from its position at the top of the fence line; therefore, the wire constituted a defect and summary judgment should not have been granted on sovereign immunity grounds. The summary judgment evidence upon which appellant relies is limited to appellant's affidavit which states, in pertinent part, as follows:

> When I looked at the razor wire shortly after I was injured (like a couple of days later), I could clearly see what appeared to be wire tie-downs that were broken

on the top of the fence line. . . . They looked to be rusted through. . . .

> The razor wire hangs down into the ragball field's field of play, but prior to my being injured I had never noticed it there. . . . It is just hanging there onto the Rec Yard and the playing field where anybody can accidently fall into it.

Such circumstantial evidence does no more than create a mere surmise or suspicion that the wire had fallen. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). Circumstantial evidence which is so meager as to make any plausible inference derived from such evidence no more than a guess is, in legal effect, no evidence at all. *Wright v. Wal–Mart Stores, Inc.,* 73 S.W.3d 552, 555 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

In support of its motion for summary judgment, TDCJ presented an affidavit from David Doughty, the prison's warden, which indicated that TDCJ intentionally placed the razor wire in the location in which appellant fell in order to deter would be escapees. Because appellant failed to present sufficient evidence to the contrary, Doughty's affidavit is controlling as to the issue of whether the wire fell or was intentionally placed at the location in which appellant was injured. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

Thus, although the razor wire was certainly on TDCJ's premises, it did not constitute an imperfection or shortcoming; nor did it lack something necessary for completion. The portion of the perimeter fence into which appellant fell was complete. The razor wire was intentionally incorporated into the construction of the fence as a deterrent. Its purpose was to harm any inmate who attempted to enter the restricted area where it was placed. Appellant's injuries are indicative of its effectiveness. We conclude that the razor

wire that injured appellant was not a premise defect.

### ii) special defect

 If an injury causing condition is a special defect, the governmental entity owes the claimant the same duty that a private landowner owes an invitee. *Roberts*, 946 S.W.2d at 843. This duty imposes the responsibility to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a condition of the premises of which the owner is or reasonably should be aware. *Id.*

"Special defect" is defined by the TTCA as an excavation or obstruction on highways, roads, or streets or the absence, condition, or malfunction of traffic signs, signals, or warning devices. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022. The examples given in the TTCA, however, are not exclusive. *Roberts*, 946 S.W.2d at 843. "Courts are to construe 'special defects' to include defects of the same kind or class as the ones expressly mentioned in the statute." *Id.*

Razor wire used on the perimeter fencing of a prison is not expressly mentioned in the above definition of special defect. Nor is it a defect of the same kind or class as the ones expressly mentioned in the statute. We find that the razor wire that injured appellant was not a special defect.

We hold that the TTCA did not waive sovereign immunity for appellant's premises-defect claims.

### b. Appellant's Negligence Theory

The TTCA waives the State's sovereign immunity for injuries caused by the use of tangible personal property if the governmental unit would, were it a private person, be liable under Texas law. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). However, the use of tangible personal property must do more than merely furnish the condition that made the injury possible; it must be a direct factor in the injuries sustained. *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998).

We have limited the phrase "tangible personal property" to include only property that is corporeal, concrete, and has a palpable existence. *Sawyer v. Texas Dep't of Criminal Justice*, 983 S.W.2d 310, 312 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Similarly, for the purposes of the TTCA, the word "use" means to "put or bring the property into action or service; to employ for or apply to a given purpose." *City of Hidalgo Ambulance Serv. v. Lira*, 17 S.W.3d 300, 304–05 (Tex.App.-Corpus Christi 2000, no pet.).

The razor wire was tangible property in that it was corporeal, concrete, and had a palpable existence. Moreover, TDCJ put the razor wire into service for a given purpose by placing the wire along the perimeter fence to deter inmates from escaping. This use of the razor wire did more than merely furnish the condition that made appellant's injury possible; it was a direct factor in appellant's injuries.

We believe that injuries proximately caused by a negligent placing of razor wire in locations where a person might accidently come into contact with it are also proximately caused by a use of tangible property under circumstances where a private person would be liable. Therefore, we hold that the TTCA waives sovereign immunity for appellant's negligence claims.

### 2. TDCJ's Duty to Appellant

Having determined that the TTCA waives sovereign immunity for appellant's negligence claims, we must next address TDCJ's assertion that it owed no duty to place the razor wire in a less accessible location or to place warnings or barriers between the rec yard and the razor wire.

 In a negligence action, a plaintiff must show (1) a duty owed by the

defendant to the plaintiff, (2) a breach of that duty, and (3) that such breach proximately caused the plaintiff's injuries. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). Of these, the existence of a duty is a threshold consideration. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The existence of a duty is a question of law for the court to decide from the circumstances surrounding the occurrence. *Id.* In determining whether a defendant owes a duty, the court must consider a number of competing individual and social interests. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983). "Although the formulation and emphasis varies with the facts of each case, three categories of factors have emerged: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations." *Id.* Of these factors, foreseeability of the risk is the dominant consideration. *Poole*, 732 S.W.2d at 311.

 In the instant case, when considering these factors, we remain cognizant that this case involves an inmate and a prison. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125–26, 97 S.Ct. 2532, 2537–38, 53 L.Ed.2d 629 (1977). We must defer to prison administrators' decisions and recognize the peculiar and restrictive circumstances of penal confinement. *See id.* The complex and often difficult realities associated with the operation of a penal institution require this deference. *Id.* 433 U.S. at 126, 97 S.Ct. at 2538.

Appellant asserts that Government Code, section 494.001 imposes a duty on TDCJ to make its perimeter security fence safe to its inmates. *See* Tex. Gov't Code Ann. 494.001 (Vernon 1998). We disagree.

The fundamental purpose of a prison is to isolate its inhabitants from society and insure that they remain isolated until they are eligible for release. Because we cannot always depend on prisoners to acquiesce to their confinement, those who design and operate prisons find it necessary to construct barriers and deterrents in an effort to enforce such confinement. To be effective, these barriers and deterrents must sometimes create peril or harm to those who come into contact with them.

We are not willing to impose a duty on prison officials to make safe those barriers and deterrents whose very purpose require them to be dangerous. Likewise, we will not impose a duty on prison officials to warn inmates of every possible hazard which these barriers and deterrents might create. It is enough that TDCJ and other prison operators warn inmates of those areas of the prison from which inmates are prohibited and to identify the consequences of failing to heed these warnings. It then becomes the duty of the individual inmates to follow the rules of the prison and the dictates of common sense by avoiding contact with those security measures which might cause physical pain and injury.

In the instant case, although it was foreseeable an inmate could injure himself on the razor wire, we find that the social utility of having the razor wire in the location in question greatly outweighed the risk of injury to the inmates. We also find that whatever risk the razor wire presented was mitigated by the general prohibition against coming into contact with the perimeter security fence. Further, it would be imposing too great a burden on TDCJ to require it to place additional barriers around all those barriers which might cause physical injury to an inmate. The utility of such a measure would be greatly outweighed by its costs.

We hold that TDCJ did not owe a duty to (1) place the razor wire at a less accessible location, (2) specifically warn appellant

of the presence of the razor wire, or (3) erect barriers around the razor wire.

Because the TTCA does not apply to appellant's premises defect claims and because TDCJ owed no duty to appellant with regard to his negligence claim, we affirm summary judgment concerning appellant's rec yard claims.

## C. SUMMARY JUDGMENT ON THE MISSING MONEY CLAIMS

Appellant brings several claims against TDCJ in relation to the $700, which is allegedly missing from his inmate trust account. Appellant asserts that this money was lost or stolen by either Mack DeShay, Jr. or another, unknown employee of TDCJ. Three of appellant's claims concerning this missing money-the conversion claim, negligence claim, and breach of fiduciary duty claim-were brought in tort under the TTCA. Appellant also made a civil rights claim against TDCJ under 42 U.S.C. section 1983. Relatedly, appellant brought an unlawful takings claim. Finally, appellant attempted to bring a claim against TDCJ for theft by a public servant. TDCJ asserted that sovereign immunity was not waived for appellant's tort claims because they did not fall under the TTCA. TDCJ also asserted that its actions were not governed by section 1983. Appellant's claims will be addressed in the above order.

### 1. The Tort Claims

Appellant attempted to invoke the trial court's jurisdiction by bringing his tort claims under the TTCA. This attempt was mistaken. The portion of the TTCA relevant to appellant's claims provides as follows:

A governmental unit in the state shall be liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting with his scope of his employment if:

(A) *the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle and motor-driven equipment,* and

(B) the employee would be personally liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (emphasis added).

The TTCA, as it is interpreted by this Court, does not provide for recovery of property damage or loss except in those instances in which such loss results from the operation and use of a motor-driven vehicle or motor-driven equipment. *Wheat v. Tex. Dep't of Corr.,* 715 S.W.2d 362, 363 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). Appellant has not and cannot allege that his loss is the result of the operation or use of a motor-vehicle or motor-equipment.

We hold that the TTCA does not waive sovereign immunity for appellant's tort claims.

### 2. The 42 U.S.C. Section 1983 Claim

Appellant sued TDCJ under 42 U.S.C. section 1983 claiming that TDCJ deprived him of his property rights to the money missing from his inmate trust fund account. Section 1983 provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1994). Initially, to determine whether a person or entity's actions are governed by section 1983, we use a two prong test. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Denson v. T.D.C.J.–I.D.*, 63 S.W.3d 454, 461 (Tex.App.-Tyler 1999, pet. denied). First we determine if the conduct complained of was committed by *a person* acting under color of state law. *Id.* Second, we determine whether this conduct deprived a person of rights, privileges or immunities secured by the United States Constitution or the laws of the United States. *Id.*

Assuming, as we must, that TDCJ, through one of its employees, did intentionally or inadvertently steal or otherwise misplace the $700 complained of, such actions would, indeed, be under the color of state law. However, appellant fails to otherwise satisfy the first prong of the test, because TDCJ is not a "person" who can be sued under section 1983. *Denson*, 63 S.W.3d at 461.

We hold that appellant failed to state a legally cognizable claim under 42 U.S.C. section 1983.

### 3. The Unlawful Takings Claim

■ Appellant brought a claim asserting that the theft or loss of the money in his inmate account constituted an illegal taking under the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, sections 17 and 19 of the Texas Constitution.

■ Whether specific acts constitute a taking is a question of law. *Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex.2001). To establish a takings claim, one must "prove (1) the State intentionally performed certain acts, (2) that resulted in a

'taking' of property, (3) for public use." *Id.* We have interpreted the "for public use" prong of this test to require evidence that independently shows the governmental entity intended to accomplish an eminent domain objective under the guise of police power. *Woodson Lumber Co. v. City of College Station*, 752 S.W.2d 744, 747 (Tex.App.-Houston [1st Dist.] 1988, no writ). Consequently, in order to state a takings claim, appellant must allege that TDCJ was attempting to benefit the public at large through the State's power of eminent domain. *See id.*

Appellant claimed that the money in his inmate account had been stolen or lost by Mack DeSha, Jr. or another, unknown employee of TDCJ. He makes no claim and there is nothing in the record to indicate that TDCJ was attempting to obtain a benefit for the public at large. Nor is there any evidence to suggest that the alleged actions of TDCJ were accomplished by eminent domain.

We hold that appellant failed to state a legally cognizable illegal takings claim under either the United States Constitution or the Texas Constitution.

### 4. The "Theft by a Public Servant" Claim

■ Appellant brought a claim alleging that TDCJ is "guilty of theft by a public servant for the theft of plaintiff's indigent supplies or trust fund monies, in violation of Texas Penal Code, section 31.03(f)." Although the cited section of the Penal Code does provide that public servants are subject to criminal penalty for theft or misappropriation of property if such theft or misappropriation was accomplished by virtue of their status as public servants, appellant lacks standing to bring a criminal action against TDCJ. To obtain relief under this statute, appellant must file charges against TDCJ with the appropriate district attorney's office.

We hold that appellant lacked standing to sue TDCJ for theft by a public servant under the Texas Penal Code.

## D. PROPRIETY OF SUMMARY JUDGMENT

Because TDCJ sufficiently met its summary judgment burden with regard to each of appellant's claims, the trial court did not err in granting summary judgment for the entire suit.

Appellant's first point of error is overruled.

## APPELLANT'S SUMMARY JUDGMENT OBJECTIONS

Appellant's third point of error asserts that the trial court erred in not giving written rulings on the numerous objections made by appellant concerning TDCJ's motion for summary judgment. Appellant asserts that the court's failure to rule on these objections harmed him in that he was unable to properly preserve error.

It is incumbent on a party making an objection to obtain a ruling or a refusal to rule on that objection in order to preserve error. TEX.R.APP. PROC. 33.1(a). When a party does not obtain a ruling on an objection and fails to request a refusal to rule or otherwise object to the court's refusal, he may not later complain about the lack of any such ruling. See id.

In the instant case, it was appellant's responsibility to obtain a ruling on his objections by the trial court. If the trial court was unwilling to rule on the objections, appellant should have asked the court for a refusal to rule and then objected to that refusal. He never asked for such a refusal. He may not now complain that error was not preserved due to the court's failure to rule on the objection.

Appellant's third point of error is overruled.

## SUMMARY JUDGMENT HEARING AND NOTICE

In his fourth point of error, appellant asserts that the trial court erred in not granting his numerous motions for continuance of the "summary judgment hearing." Appellant also asserts that the court erred in postponing the summary judgment hearing and granting TDCJ's request for leave to re-submit its motion for summary judgment.

## A. CONTINUANCE OF SUMMARY JUDGMENT HEARING

We review the denial of a motion for continuance under an abuse of discretion standard. *State v. Wood Oil Dist., Inc.*, 751 S.W.2d 863, 865 (Tex.1988). We will not disturb the trial court's ruling on a motion for continuance absent a clear abuse of discretion. *Id.*

It was purely within the trial judge's discretion as to whether to hold an oral hearing on TDCJ's motion for summary judgment. *See Gordon v. Ward*, 822 S.W.2d 90, 92 (Tex.App.-Houston [1st Dist.] 1991, writ denied). Ultimately, the trial court rendered summary judgment on the basis of the pleadings and did not hear oral argument. Therefore, appellant's assertion that the court abused its discretion in not granting his motion to continue the summary judgment hearing is moot. There was no summary judgment hearing. The court rendered judgment solely on the basis of the pleadings and summary judgment evidence.

We hold that the trial court did not abuse its discretion in denying appellant's motions for continuance of the summary judgment hearing.

## B. TIMELINESS OF SUMMARY JUDGMENT PLEADINGS

Appellant contends that the trial court erred in allowing TDCJ to submit its sec-

ond supplemental MSJ, because appellant was not given sufficient notice and time to respond. Specifically, appellant asserts that the trial court was required to give him at least 21 days notice to respond to the motion pursuant to Texas Rule of Civil Procedure 166a(c).

Rule 166a(c) provides, in pertinent part, as follows:

> Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing.

TEX.R. CIV. PROC. 166a(c). Rule 166a(c) also provides that:

> Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.

*Id.*

A party can amend its pleadings at any time; however, the trial court must grant leave to file an amended pleading within seven days of the date of trial. TEX.R. CIV. P. 63. For the purposes of Rule 63, a summary judgment hearing or submission date is a "trial." *See Goswami v. Metro. Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988). A liberal interpretation has been given to Rule 63. *Id.* Therefore, if the record does not reflect that the trial court denied leave to amend a pleading, we presume that the court considered the amended pleading when it rendered judgment. *Honea v. Morgan Drive Away, Inc.,* 997 S.W.2d 705, 707 (Tex.App.-Eastland 1999, no pet.) (citing *Goswami,* 751 S.W.2d at 490).

▆ In the instant case, no hearing was held on the motion for summary judgment. The submission date was set at the September, pre-trial hearing at which both appellant and TDCJ were present and participated. At the September, pre-trial hearing, the trial court specifically gave TDCJ 14 days in which to submit its final amended motion for summary judgment. It then gave appellant an additional 14 days to respond. The submission date was, therefore, set for 28 days after the September 21, 2001 hearing. This gave appellant more than the required 21 days notice. *See* TEX.R. CIV. P. 166a(c).

Although TDCJ filed its second supplemental motion after the 14 days allowed by the trial court, it was within the trial court's discretion to accept and consider the motion. The record does not indicate that the trial court denied TDCJ leave to file the motion late. Indeed, the trial court's judgment indicates that the court considered "the argument and pleadings of the parties filed herein." We take this to mean that the trial court accepted and considered the late-filed pleading as well. *See Honea,* 997 S.W.2d at 707 (holding that trial court denied party leave to file late pleading when judgment stated that court considered, "the pleadings and summary judgment evidence *timely* filed")(emphasis added). Further, appellant was not harmed because the court allowed him 14 days from the date that TDCJ filed its new motion to respond. The 14 days the court allowed appellant to respond was all that Rule 166a(c) required.

We overrule appellant's fourth point of error.

## CONCLUSION

We have overruled all grounds alleged by appellant for reversing the summary judgment. Accordingly, we affirm the judgment of the trial court.