**Affirmed in Part, Reversed in Part, and Remanded, and Majority and Concurring and Dissenting Opinions filed May 4, 2021.**



In the

# Fourteenth Court of Appeals

---

## NO. 14-19-00145-CV

---

### REGIONAL SPECIALTY CLINIC, P.A., Appellant

v.

### S.A. RANDLE & ASSOCIATES, P.C. AND
### SARNIE A. RANDLE, JR., Appellees

---

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2017-81941**

---

## MAJORITY OPINION

This appeal arises out of a dispute between a personal-injury lawyer and a medical provider for payment for services provided to the lawyer's client. Appellant Regional Specialty Clinic, P.A. ("clinic") appeals from a final summary judgment that it take nothing from appellees S.A. Randle & Associates, P.C. and Sarnie A. Randle, Jr. (collectively Randle or "lawyer"). Asserting multiple theories of

recovery against the lawyer, the clinic alleged that the lawyer wrongfully failed to pay for medical services and treatment provided to the lawyer's client, Patrick Cuba (Cuba or "client"), out of the proceeds of the client's personal-injury settlement.

The lawyer moved for traditional and no-evidence summary judgment on all of the clinic's claims, arguing he had no knowledge of the assignment of benefits signed by his client and that he owed no duty to remit any of the settlement proceeds to the clinic. The trial court granted the motion for summary judgment, which the clinic challenges in two issues. We affirm in part, reverse in part as to one claim only, and remand the case for further proceedings.

## Background

The clinic treated Cuba following an April 2012 car accident. The clinic alleges that at the time it provided treatment, Cuba signed a document assigning to the clinic a portion of any personal-injury recovery received. When the treatment occurred, Cuba was represented by an attorney who is not involved in this suit. Cuba later changed attorneys and hired Randle to represent him. Randle did not have a contract or any type of financial arrangement with the clinic for Cuba's medical treatment.

In July 2014, Randle settled the client's lawsuit for $60,000, comprised of $30,000 payments by or on behalf of two insurers. From the settlement proceeds, Randle paid legal expenses, one of the client's various medical providers, and the lawyer's attorney's fees. Randle then remitted the balance to Cuba. It is undisputed that Randle's settlement demands did not reflect costs for Cuba's treatment at the clinic. Randle mistakenly believed at the time that Dr. Bobby Pervez, the physician who treated Cuba at the clinic, was affiliated with another provider. Though Randle learned during the personal-injury lawsuit that the clinic provided medical treatment to Cuba, he maintains he was unaware of any financial arrangement between the

2

clinic and Cuba, or any financial interest on the part of the clinic in the outcome of the personal-injury lawsuit.

More than three years later, the clinic sued Randle to recover the costs of the client's medical treatment. The clinic's live pleading asserted claims for tortious interference with an existing contract, money had and received, unjust enrichment, and breach of a third-party beneficiary contract. In his live answer, Randle pleaded a general denial along with several affirmative defenses, including privilege and justification, lack of knowledge of any assignment, and statute of limitations.

Randle filed an amended hybrid motion for traditional and no-evidence summary judgment. The clinic responded to the hybrid motion, asserted special exceptions, and objected to some of the lawyer's summary-judgment evidence.

The trial court rendered a final summary judgment in Randle's favor,[1] and the clinic appealed.[2]

## Analysis

The clinic presents two issues for our review. In its first issue, the clinic asks this court to review the trial court's rulings on its objections and special exceptions

---

[1] The final judgment states that it grants the lawyer's "Motion for Summary Judgment." The order also states that the court heard and considered the lawyer's "Motion for Traditional Summary Judgment," which was superseded by his filing of the amended hybrid motion and could no longer be considered. Tex. R. Civ. P. 65; *Retzlaff v. Tex. Dep't of Criminal Justice*, 135 S.W.3d 731, 737-38 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Regardless of the pleading referred to by the trial court in the judgment, the amended hybrid motion was the live motion before the court. *Retzlaff,* 135 S.W.3d 738. Therefore, we conclude that the "Motion for Summary Judgment" granted by the trial court was the lawyer's amended hybrid motion.

[2] Though the final judgment is entitled "Order Granting Partial Summary Judgment," the language in the order reflects the intent of the trial court with "unmistakable clarity" to dispose of all parties and all claims: "[T]he Court GRANTS Defendants' Motion for Summary Judgment and hereby dismisses all claims brought in this case against Sarnie Randle, Jr. and S. A. Randle & Associates, P.C." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192-93 (Tex. 2001).

to the lawyer's hybrid motion. In its second issue, the clinic argues that the trial court erred in rendering summary judgment in Randle's favor.

## A. Standard of review

Our review of a summary judgment is de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Because the trial court's summary judgment does not specify the ground or grounds on which it was granted, we uphold the court's judgment if properly supported by any ground asserted in the motion. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661. Further, when the motion asserts both no-evidence and traditional grounds, we review the no-evidence grounds first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). In a no-evidence motion for summary judgment, the movant represents there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i). The nonmovant bears the burden to present more than a scintilla of probative evidence raising a genuine issue of material fact as to each element challenged in the motion. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).

To be entitled to traditional summary judgment, a movant must establish there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank*

4

*v. Fernandez*, 315 S.W.3d 494, 508-09 (Tex. 2010). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

We start with the clinic's first issue to determine the summary-judgment grounds properly before the trial court.

## B. The clinic's objections to the lawyer's affirmative defenses raised after the pleading deadline

The clinic objected that the lawyer's affirmative defenses of (1) lack of knowledge and (2) privilege and justification were not raised until after the docket-control order pleading deadline. *See* Tex. R. Civ. P. 166. Rule 63 provides that parties may amend their pleadings or respond to pleadings on file of other parties at such time as not to operate as a surprise to the opposite party; provided that any pleadings or responses offered within seven days of trial or after such time as may be ordered by the judge under Rule 166 shall be filed only after leave is obtained, which leave shall be granted unless there is a showing that such filing will operate as a surprise to the opposing party. Tex. R. Civ. P. 63. Randle filed his first amended answer several days after the pleading deadline contained in the docket-control order, but more than one month before the summary-judgment hearing. Texas courts have held that in the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the trial court's action in considering the amended pleading. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988). In its objection to the lawyer's summary-judgment motion, the clinic did not argue or demonstrate surprise.

5

Therefore, the trial court's overruling of the clinic's objection established leave of court for the amended pleading and did not constitute error. *Id.*

## C. The clinic's special exceptions to the lawyer's traditional summary-judgment motion

The clinic specially excepted to Randle's hybrid motion because Randle failed to include specific citations to summary-judgment evidence supporting his traditional summary-judgment motion on the clinic's claims of tortious interference and money had and received, as well as the lawyer's affirmative defense of privilege and justification.[3] The trial court overruled these special exceptions.

When a nonmovant believes a motion for summary judgment is unclear, ambiguous, or lacks specificity, it must file special exceptions. *Brocail v. Detroit Tigers, Inc.*, 268 S.W.3d 90, 100 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). That party must then obtain a ruling on the special exceptions to preserve the issue for appellate review. Tex. R. App. P. 33.1(a)(1); *see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993) (plurality op.) ("The practical effect of failure to except is that the non-movant loses his right to have the grounds for summary judgment narrowly focused, thereby running the risk of having an appellate court determine the grounds it believes were expressly presented in the summary judgment.").

The clinic's special exceptions sought to require the lawyer "to include specific cites to the summary[-]judgment evidence they rely on, if any." The clinic cites no rule or case law requiring the lawyer to specifically cite to summary-

---

[3] The clinic argues on appeal that it raised a "special exception to [the lawyer's] confusing motion for summary judgment." While the clinic did state in arguing its special exceptions that the lawyer did not specify whether he was moving on traditional or no-evidence grounds, the relief the clinic sought from the trial court was to require the lawyer to amend and include specific cites to the summary-judgment evidence. Therefore, we evaluate only those special exceptions raised in the trial court.

judgment evidence, and we are aware of none. While it is a better practice to specifically cite to the summary-judgment evidence in the motion itself, Rule 166a(c) does not require it. Tex. R. Civ. P. 166a(c); *Wilson v. Burford*, 904 S.W.2d 628, 629 (Tex. 1995) (per curiam) (grounds for summary judgment must be set out in the motion though summary-judgment evidence need not be).[4] Therefore, we conclude that the trial court did not err in overruling the clinic's special exceptions. We overrule the clinic's first issue.

## D. The lawyer's hybrid motion

### 1. *Tortious interference*

We first examine the propriety of the trial court's summary judgment in Randle's favor on the clinic's tortious-interference claim, beginning with the lawyer's no-evidence grounds.

Randle's hybrid motion identifies the elements of this claim, and specifically argues that the clinic has no evidence that Randle knew of the alleged assignment or any evidence that he intended to interfere with the assignment of benefits between Cuba and the clinic. To recover on a claim for tortious interference with a contract, a plaintiff must establish: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). To establish the element of a willful and intentional act of interference,

---

[4] On appeal, the clinic argues that the lawyer failed to address its arguments regarding the trial court's rulings on its special exceptions and objections to the lawyer's hybrid notion. The lawyer does, without any discussion, assert that the trial court did not commit any error, but if it did, that error was harmless. To the extent the clinic attempts to argue briefing waiver, we conclude there is no such waiver and determine the clinic's appellate issues on the merits. *See* Tex. R. App. P. 38.1(i), 38.2(a)(2), 38.9.

a plaintiff must produce some evidence that the defendant was more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under a contract. *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

In support of its claim, the clinic cited to Randle's designation of expert witnesses filed in the client's personal-injury case, which reflected that before settlement, Randle designated Dr. Bobby Pervez—principal of the clinic—and correctly identified his practice. The clinic contends the expert-witness designation, as well as treatment records contained within Randle's litigation file, establish the lawyer's knowledge that Cuba received medical treatment at the clinic. Further, the clinic cites to a statement in Randle's affidavit that he would have requested records from the clinic had the case not settled so quickly. The clinic's summary-judgment evidence fails to demonstrate that Randle knew that a contract existed between Cuba and the clinic, and demonstrates only that Randle knew that Cuba received treatment at the clinic.

Relying on *Exxon Corp. v. Allsup*,[5] the clinic further argues that the facts and circumstances of which Randle knew would have led a "reasonable personal[-]injury lawyer to believe there was a contract in which [the clinic] had an interest."[6]

---

[5] 808 S.W.2d 648, 656 (Tex. App.—Corpus Christi 1991, writ denied).

[6] The clinic incorrectly states that "a plaintiff can prove tortious interference by proving the defendant had knowledge of facts and circumstances that would lead a reasonable person to believe there was a contract in which the plaintiff had an interest" and incorrectly relies on *John Paul Mitchell System v. Randall's Food Markets, Inc.*, 17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000, pet denied), for that proposition. Only the element of intent is established by showing either (1) that the interfering party had actual knowledge of the existence of the contract and of the plaintiff's interest in it, or (2) that the interfering party had knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence of the contract and the plaintiff's interest in it. *Allsup*, 808 S.W.2d at 656. Accordingly, we read the clinic's argument as addressing only the intent element—the element of the claim challenged by the lawyer on no-evidence grounds.

Although the facts outlined by the clinic might create suspicion as to whether Cuba had a contract with the clinic, there is no evidence raising a fact issue that Randle knew, at the time he settled the personal-injury lawsuit, there was a reasonable probability that Cuba and the clinic had entered into a contract. Absent such evidence, the lawyer's settlement of the personal-injury lawsuit cannot constitute intentional interference. Intentional conduct means that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *See Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992) (citation omitted). At most, the clinic speculates that the lawyer should have suspected a contract existed because Cuba received treatment at its facility. Suspicion without more "does not rise to a level sufficient to create a fact issue" as to the lawyer's knowledge. *Jannise v. Enter. Prods. Operating LLC*, No. 14-18-00516-CV, 2019 WL 3432171, at *5 (Tex. App.—Houston [14th Dist.] July 30, 2019, no pet.) (mem. op.); *see also Steinmetz & Assocs. Inc. v. Crow*, 700 S.W.2d 276, 280 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). If the lawyer did not know of an existing or reasonably likely contract with a third party, then he could not have intended to interfere with that contract. *Jannise*, 2019 WL 3432171 at *5.

The clinic also argues that the trial court should not have rendered summary judgment on its tortious-interference claim because Randle is not credible and his lack of credibility creates a fact issue for the jury. However, Randle's credibility is only material to consideration of his traditional motion for summary judgment and his corresponding affidavit. *See* Tex. R. Civ. P. 166(c), (f). Because we conclude that the trial court properly rendered summary judgment on no-evidence grounds, we need not address these credibility issues or the lawyer's affirmative defenses of privilege and justification and limitations as they pertain to tortious interference. *See*

9

Tex. R. App. P. 47.1. Concluding there is no evidence raising a fact issue regarding the "intentional" element of the clinic's cause of action for tortious interference with a contract, we affirm the trial court's summary judgment in Randle's favor on this claim.

### 2. *Money had and received*

The clinic pleaded that the lawyer possessed money that in equity and good conscience belongs to it, making an equitable claim for money had and received. This equitable doctrine is designed to prevent unjust enrichment. *Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881, 883 (Tex. App.—Houston [14th Dist.] 2012, no pet.). To prove a claim for money had and received, the plaintiff must prove that the defendant holds money that in equity and good conscience belongs to the plaintiff. *See Hunt v. Baldwin,* 68 S.W.3d 117, 132 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951). Thus, an essential element of the clinic's claim is proving that some part of the client's settlement proceeds belong to the clinic. *See Am. Petrofina Co. of Tex. v. Panhandle Petroleum Products, Inc.*, 646 S.W.2d 590, 592 (Tex. App.—Amarillo 1983, no writ).

The lawyer's motion identified these elements and argued that the lawyer "does not, and has never held money belonging to Plaintiff." Accordingly, Randle identified the elements of the claim on which there was no evidence.

Once a no-evidence summary-judgment movant meets its burden to identify the element of the claim at issue on which no evidence exists, the nonmovant must come forward with more than a scintilla of probative evidence raising a genuine issue of material fact as to the challenged element. *See Tamez*, 206 S.W.3d at 582. The clinic failed in this burden. Although the clinic specially excepted to the money had and received part of Randle's motion, the court overruled the special exception, and the clinic did not alternatively, or subsequently, address the merit of the motion

10

or present evidence in response to the money-had-and-received claim. In particular, the clinic did not attach to its summary-judgment response an authenticated copy of the assignment allegedly signed by Cuba that forms the basis of its claim. The agreement's existence is not established in the record. For these reasons, the clinic failed to present evidence that the lawyer has any money "belonging" to it.

We affirm the trial court's summary judgment in Randle's favor on this claim.

### 3. *Unjust enrichment*

In the lawyer's motion, he argued that he was entitled to summary judgment on the unjust-enrichment claim. The lawyer argued that he owed no duty to the clinic absent knowledge of an assignment of benefits or a letter of protection. In particular, he argued that a lawyer has no duty to disburse or safeguard funds in which a third party claims an interest unless the lawyer is aware of the third party's claim. Citing Texas State Bar Ethics Opinions, the lawyer asserted that unless a lawyer is aware that a third-party claimant has an interest in client funds held by the lawyer, the lawyer must deliver client funds to the client in accordance with Rule 1.14 of the Texas Disciplinary Rules of Professional Conduct. The lawyer presented summary-judgment evidence that he was not aware of any assignment of benefits that Cuba may have signed in the clinic's favor. He stated that: (1) he never received a copy of Cuba's prior attorney's file; (2) he had no contact or correspondence with the clinic; (3) the records the lawyer discovered included no copy of any assignment of benefits to the clinic; (4) "up to the time that the funds were disbursed, no one at S. A. Randle & Associates, P.C., including Sarnie A. Randle, Jr., had received or been notified about any claim or bill owed to Plaintiff"; and (5) "[a]t no time during my representation of Mr. Cuba was any claim for or on behalf of Plaintiff asserted or made known to me or any member of my staff."

11

A party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Proof that Randle lacked knowledge of the alleged assignment by Cuba benefitting the clinic necessarily defeats any claim that the lawyer obtained a benefit from the clinic by "fraud, duress, or the taking of an undue advantage." Fraud is a false material misrepresentation that (1) was either known to be false when made or was asserted without knowledge of its truth, (2) was intended to be acted upon, (3) was relied upon, and (4) caused injury. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Randle's evidence disproves the existence of any fraud in disbursing the settlement funds as he did because there was no misrepresentation or omission known to be false or asserted without knowledge of its truth. Additionally, the lawyer could not have taken "undue advantage" of the clinic when the lawyer was unaware of any assignment in plaintiff's favor or that the plaintiff claimed an assignment existed. There is no indication of duress either, as Randle presented evidence that he had no contact or correspondence with the clinic at any time before the settlement proceeds were disbursed, and Randle lacked knowledge of an assignment. Duress is defined as a threat to do some act that the threatening party has no legal right to do. *Randle v. Mid Gulf, Inc.*, No. 14-95-01292-CV, 1996 WL 447954, at *2 (Tex. App.—Houston [14th Dist.] Aug. 8, 1996, writ denied) (not designated for publication) (citing *Creative Mfg., Inc. v. Unik, Inc.*, 726 S.W.2d 207, 211 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.)). The threat must be of such character as to destroy the free agency of the party to whom it is directed and cause him to do that which he would not otherwise do and was not legally bound to do. *Id.*

Construing this part of Randle's motion as a traditional summary-judgment motion, Randle's argument and evidence defeat the elements of unjust enrichment

12

as a matter of law because, if the lawyer's evidence is true, then it defeats any fraud, duress, or undue advantage. The clinic did not present evidence creating a genuine issue of material fact on this claim. Accordingly, we affirm the trial court's summary judgment in Randle's favor on the clinic's unjust enrichment claim.

Our dissenting colleague would reverse the summary judgment on this claim because he concludes that Randle's motion failed to adequately address the unjust-enrichment claim. For the reasons stated, we respectfully disagree. The motion presents a legal argument and supportive evidence conclusively disproving at least one element of the unjust enrichment claim.

### 4. *Breach of third-party beneficiary contract*

The clinic asserted a claim for breach of a third-party beneficiary contract. It alleged that Randle "personally agreed to satisfy all liens as a condition of the underlying settlement(s)." According to the clinic, it is an intended third-party beneficiary of those agreements, and Randle breached them by failing to satisfy all liens—including the clinic's lien—from the settlement proceeds.

In his hybrid motion, Randle sought summary judgment under both traditional and no-evidence standards because he argued in the motion that there is no evidence of breach, and that the evidence presented conclusively disproves breach. As to the no-evidence ground, Randle specifically identified the element of the clinic's claim on which it could produce no evidence—breach. This is sufficient to satisfy no-evidence standards for summary judgment. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310-11 (Tex. 2009). Randle also argued that the evidence proves conclusively that no breach occurred, thereby seeking summary judgment on traditional grounds by conclusively disproving an element of the clinic's contract claim.

13

Regardless whether we construe Randle's motion as asserting a right to judgment under no-evidence or traditional summary-judgment standards, Randle made essentially the same point. Specifically, Randle argued that he did not breach the contract at issue—the release agreement between Cuba and the defendants in the client's personal-injury lawsuit—because the clinic never asserted its lien or claim. Randle based his argument on the following language in one of the releases:

> Claimant and his/her attorneys, if any, agree to satisfy *any and all liens asserted*. This includes, but is not limited to, any lien *asserted* by: a hospital, a healthcare provider, Medicare, Medicaid, or worker's compensation. Claimant and his/her attorneys, if any, agree to satisfy any and all subrogation claims of any health insurer related to expense incurred for the treatment of claimant following the occurrence.

(Emphasis added). According to Randle, this language means that the release applied only to a lien or claim known at the time it was executed; that is, he had a duty to satisfy only those liens that had been "asserted" by the date of the settlement. Because the clinic had not asserted its lien by that date, Randle continues, he did not breach the contract.

The language on which Randle relies, however, does not support his position. The release does not state that the "Claimant and his attorneys" are only responsible for those liens known at the time of execution. Rather, the release broadly requires "Claimant and his attorneys" to satisfy "any lien asserted." Randle's argument is based on the premise that the contract at issue was not breached because the clinic never asserted a claim, when, in fact, it is undisputed the clinic has asserted a claim. The evidence cited by Randle does not conclusively negate a breach of contract.

Because the record contains evidence that the clinic asserted its lien that has not been satisfied, Randle is not entitled to summary judgment either on no-evidence or traditional grounds with respect to the contract containing the text Randle cites.

14

Further, although Randle argued in his motion that the release agreement was never breached, he directed the trial court (and directs us) to only one release agreement, when in fact there are two.[7] Only one release agreement in our record contains the language discussed by Randle in his motion and by this court in the preceding paragraphs. The other release agreement includes no similar language requiring the claimant and his attorney to satisfy all "liens asserted." Thus, Randle moved for summary judgment as to the clinic's breach of third-party beneficiary contract claim as to one contract but not both. It is error to grant summary-judgment relief not requested in the motion. *Said v. Sugar Creek Country Club, Inc.*, No. 14-17-00079-CV, 2018 WL 4177859, at *5 (Tex. App.—Houston [14th Dist.] Aug. 31, 2018, pet. denied) (mem. op.). Because the summary judgment grants the lawyer full relief on this claim when the motion argued that only one contract was not breached, the trial court erred. And because the lawyer does not address any other element of the contract claim, including whether the clinic can establish its status as a third-party beneficiary, we conclude that he did not establish a right to summary judgment as a matter of law. *See Frost Nat'l Bank*, 315 S.W.3d at 508-09. Thus, the trial court erred in rendering summary judgment on the clinic's third-party beneficiary of a contract claim.

We sustain the clinic's second issue in part as to its third-party beneficiary of a contract claim, and overrule the remainder of the issue.[8]

---

[7] The $60,000 settlement was funded with two $30,000 payments by or on behalf of two insurers. Cuba signed two separate and distinct release agreements.

[8] In his hybrid motion and on appeal, the lawyer also makes the argument, not specifically tied to any cause of action, that he was not aware of the client's assignment of benefits to the clinic, and therefore had no obligation to the clinic as a third party. While the lawyer's arguments are somewhat unclear, the duty he addresses is the duty an attorney owes to the attorney's client as well as to third parties under the Texas Disciplinary Rules of Professional Conduct. Tex. Disciplinary Rules Prof'l Conduct R. 1.14, *reprinted in* Tex. Gov't Code, tit. 2 subtit. G, app A ("Safekeeping Property"). The lawyer cites to ethics opinions issued by the Professional Ethics

## Conclusion

We overrule the clinic's first issue and sustain in part and overrule in part its second issue. We reverse the portion of the trial court's judgment rendering summary judgment in Randle's favor on the clinic's claim for breach of a third-party beneficiary contract. We affirm the remainder of the trial court's judgment as challenged on appeal. We remand the case to the trial court for further proceedings. Tex. R. App. P. 43.3.


/s/ Kevin Jewell
   Justice

Panel consists of Justices Wise, Jewell, and Spain (Spain, J., concurring and dissenting).

---

Committee of the State Bar of Texas that interpret the Texas Disciplinary Rules of Professional Conduct as not creating any duty on the part of an attorney to a third party when the attorney has no knowledge of a third party's interest in a settlement. This argument is immaterial as the clinic's live pleadings did not assert a breach of the Disciplinary Rules. Though the lawyer does not direct this argument toward any specific cause of action pleaded by the clinic, duty is not an element of any of the clinic's live causes of action. Therefore, the lawyer's argument does not defeat any element of the clinic's remaining causes of action.