**Reversed and Remanded and Memorandum Opinion filed May 27, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00165-CV

**CITY OF HOUSTON, TEXAS, Appellant**

**V.**

**PATTI GONZALES, Appellee**

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2018-15548**

## M E M O R A N D U M   O P I N I O N

The City of Houston appeals the denial of its plea to the jurisdiction in this negligence suit. Appellee Patti Gonzales slipped and fell on a spill near a restaurant in Houston's George Bush Intercontinental Airport Terminal C South. The City sought dismissal on governmental immunity grounds, which the trial court denied.

As a governmental unit, the City may be liable for personal injury caused by a condition of real property if the City would, were it a private person, be liable to Gonzales according to Texas law. Tex. Civ. Prac. & Rem. Code § 101.021(2). The

property condition alleged here is a premises defect, and the City argues that it cannot be liable for injuries caused by the condition because the City did not control the premises where the incident occurred. The City contends that United Airlines, Inc. controlled the premises subject to a lease agreement. We agree and hold that the trial court erred in denying the City's jurisdictional plea. We reverse the trial court's order and remand the case to the district court with instructions to dismiss Gonzales's suit against the City for lack of subject-matter jurisdiction after it disposes of Gonzales's motion for sanctions.

## Background

Gonzales alleged that in May 2016 she worked as a sales representative at the airport. During her lunch break, Gonzales slipped and fell at the salad bar of a restaurant located in the airport's Terminal C. After notifying the City of her claim, Gonzales sued the City and asserted negligence and gross negligence claims. Gonzales invoked the Texas Tort Claims Act's ("TTCA")[1] immunity waiver. She alleged that the City created a dangerous condition that posed an unreasonable risk of harm, of which the City had actual or constructive knowledge. She contended further that the City breached its duty either to warn her or make the premises reasonably safe.

The City filed a plea to the jurisdiction and sought dismissal of Gonzales's suit based on governmental immunity. Principally, the City argued that it is immune from Gonzales's premises-defect claim because it did not control the premises where the incident occurred. The City presented evidence that the accident was alleged to have occurred in an area leased to United Airlines, and that under the lease the City did not retain control over the leased premises. Rather, the City argued, United

---

[1] *See* Tex. Civ. Prac. & Rem. Code ch. 101.

2

Airlines had exclusive control for cleaning and maintaining the area in question. The City attached to its plea a sworn copy of the lease agreement and a copy of Gonzales's verified interrogatory answers.

Approximately three weeks later, Gonzales filed a second amended petition, adding United Airlines as a defendant.[2] Gonzales then filed in a single document a response to the City's plea to the jurisdiction and a motion for sanctions. In her response, she presented two general categories of argument. In one group of arguments, Gonzales asserted various discovery-related complaints. She argued that the City had not disclosed the existence of the lease agreement with United Airlines until it filed its plea to the jurisdiction in November 2019, even though the accident occurred in May 2016 and the City's discovery responses predating the filing of its plea did not disclose any other potentially liable parties. She also requested discovery to determine whether the City had any role under the lease in maintaining the leased premises. Finally, she requested sanctions against the City because it failed to disclose the lease's existence until November 2019.

In a second category of argument, Gonzales responded to the merits of the City's immunity position. She first argued that the sole grounds justifying a plea to the jurisdiction are: (1) the lack of justiciable issues; (2) the lack of standing; and (3) the lack of ripeness. Additionally, Gonzales asserted that the City was not immune because the City's admitted ownership of the airport was sufficient to give rise to potential liability, and that in any event the City had failed to prove that it did not control or operate the premises.

Unbeknownst to Gonzales, the trial court had signed a final judgment granting the City's jurisdictional plea on December 20, 2019, the day before Gonzales filed

---

[2] Gonzales's claims against United Airlines are not at issue in this appeal.

3

her response.  One week after the judgment, Gonzales filed a letter requesting that the court set aside the December 20 judgment because it was signed before the noticed submission date and before Gonzales filed her response.  Determining that she signed the December 20 judgment by mistake, the trial judge signed a new order on February 10, 2020 vacating the December 20 order and denying the City's plea.  The February 10 order is silent as to Gonzales's requests for further discovery and motion for sanctions.

The City timely filed this interlocutory appeal from the February 10 order denying its plea to the jurisdiction.

## Appellate Jurisdiction

We are obliged to evaluate our jurisdiction even when no party challenges it. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-46 (Tex. 1993); *DeWolf v. Kohler*, 452 S.W.3d 373, 382 (Tex. App.—Houston [14th Dist.] 2014, no pet.).  The December 20, 2019 judgment was a final judgment because it:  granted the City's plea to the jurisdiction, ordered Gonzales's claims dismissed for lack of subject-matter jurisdiction, expressly stated that it disposed of all parties and claims and "is final and appealable," and was entitled "Final Judgment."  *E.g.*, *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200-01 (Tex. 2001).  Gonzales filed a letter on December 27, 2019 asking the court to vacate the December 20 judgment.  Because the filed letter requested the court to alter or vacate the relief awarded in the December 20 judgment, the letter is properly characterized as a motion for new trial. *See* Tex. R. Civ. P. 320; *Aero at Sp. Z.O.O. v. Gartman*, 469 S.W.3d 314, 316 (Tex. App.—Fort Worth 2015, no pet.) (explaining that any timely filed motion seeking to vacate a trial court's judgment qualifies as a motion for new trial, even if not labeled a motion for new trial).

4

A motion for new trial filed within thirty days of the order it challenges extends the trial court's plenary jurisdiction over the case until thirty days after the motion is overruled. *See* Tex. R. Civ P. 329b(e). Here, because Gonzales filed her letter within thirty days of the December 20 judgment, the letter extended the trial court's plenary jurisdiction to vacate the judgment and grant a new trial. The court vacated the December 20 judgment and signed a new order denying the City's plea on February 10, 2020, before its plenary jurisdiction expired. The City timely filed an appeal from the February 10 order. Therefore, we have jurisdiction.

**Merits of the City's Appeal**

**A.    Standard of Review and Governing Law**

Subject-matter jurisdiction is necessary to a court's authority to decide a case. *City of Houston v Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam). A plea to the jurisdiction seeks to dismiss a case for want of subject-matter jurisdiction. *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2010). Because subject-matter jurisdiction is a question of law, we review the court's ruling de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *City of Brazoria v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *3 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.). In deciding a jurisdictional plea, the trial court may not weigh the merits of the plaintiff's claims but must consider only the pleading and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

A defendant's jurisdictional plea may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 228. The City challenged the existence of jurisdictional facts, so we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* at 227. We take as true all evidence

favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor. *See id.* at 228. If the relevant evidence is undisputed or a fact question is not raised relative to the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea, and the fact issue will be resolved by the fact finder. *Id.* at 227-28.

Unless the legislature expressly waives it, local governmental entities have absolute immunity from suit. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). When the legislature provides for a waiver of immunity from suit, it must do so with clear and unambiguous language, and any ambiguity must be resolved in favor of retaining immunity. *Tooke v. City of Mexia*, 197 S.W.3d 325, 328-29, 333 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003). A governmental unit is immune from suit unless the TTCA expressly waives immunity, which it does in three areas when the statutory requirements are met: (1) use of publicly owned automobiles; (2) injuries arising out of a condition or use of tangible personal property; and (3) premises defects. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). The waiver of immunity in these areas applies "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2).

## B.    Application

The City contends that Gonzales's claims are barred by governmental immunity. In support of this issue, the City asserts that: (1) Gonzales's claim is, and can only be, one sounding in premises-defect; and (2) the City cannot be liable

under a premises-defect theory because the City leased the premises where Gonzales fell to a tenant, and the City did not retain any control over the leased premises.[3]

In response to the City's argument that it is not liable because it did not control the premises, Gonzales argues that the City may be liable because it is the airport's owner, and that the City otherwise failed to prove it lacked control over the area in question. Regarding the nature of her claim, Gonzales disputes the City's assertion that a slip-and-fall claim such as hers sounds exclusively in premise-defect. She contends that she may assert both a premises-defect and a negligent-activity type claim.

We consider first the proper characterization of Gonzales's claim.

1.    *Gonzales pleaded only a premises-defect claim.*

The parties dispute whether Gonzales's allegation that she slipped and fell on a spill constitutes only a premises-defect claim, or alternatively, whether it can support liability under both premises-defect and negligent-activity theories.

Gonzales had the initial burden to plead jurisdictional facts to show a waiver of the City's governmental immunity. *City of Texas City v. Woodkins*, No. 14-15-01053-CV, 2017 WL 2367515, at *4 (Tex. App.—Houston [14th Dist.] May 31, 2017, no pet.) (mem. op.). We examine Gonzales's petition to determine the nature of her negligence claims and whether she alleged sufficient facts for her claims to survive a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 230; *Woodkins*, 2017 WL 2367515, at *4 (examining characterization of claim as premises-defect or

---

[3] The City also urged that Gonzales may not recover exemplary or punitive damages because the TTCA does not waive immunity for recovery of such damages. Tex. Civ. Prac. & Rem. Code § 101.024 ("This chapter does not authorize exemplary damages."); *see also Duhart v. State*, 610 S.W.2d 740, 741-42 (Tex. 1980); *City of Houston v. Johnson*, 353 S.W.3d 499, 503 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). However, Gonzales removed from her live pleading any request for exemplary damages from the City.

negligent-activity); *Rogge v. City of Richmond*, 506 S.W.3d 570, 575 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (same).

In her live pleading, Gonzales alleged the following facts to support her claims:

> Plaintiff was an invitee at Houston Intercontinental Airport, when she slipped and fell on a substance on the floor in the dining area that Defendants and/or their agents, servants, and/or employees knew, or in the exercise of reasonable care should have known existed. Notably, there were no "wet floor" signs or warnings.

She also alleged that the substance on which she slipped posed an unreasonable risk of harm, and that the defendants failed to warn of the risk or correct it.

Texas law has long distinguished between causes of action based on negligent activities and those based on premises defects. *See Sampson*, 500 S.W.3d at 386-87; *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Clayton W. Williams, Jr. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). A negligent-activity claim arises from activity contemporaneous with the occurrence, whereas a premises-defect claim is based on the property itself being unsafe. *Shumake*, 199 S.W.3d at 284. When a claim does not result from contemporaneous activity, the claimant has no negligent-activity claim, and her claim sounds exclusively in premises-defect. *See Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 215 (Tex. 2015); *Shumake*, 199 S.W.3d at 284. Both within and outside the TTCA, the Supreme Court of Texas has consistently treated slip/trip-and-fall cases as presenting claims for premises defects. *United Scaffolding Inc. v Levine*, 537 S.W.3d 463, 472 (Tex. 2017); *Sampson*, 500 S.W.3d at 386 (citing *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010) (per curiam); *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 512-13 (Tex. 2008) (per curiam); *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407-09 (Tex. 2006)). A claim

cannot be both a premises-defect claim and a negligent-activity claim. *See Sampson*, 500 S.W.3d at 385 (citing *Miranda*, 133 S.W.3d at 233). Whether a claim is based on a premises defect is a legal question. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 866 (Tex. 2002) (per curiam).

As is apparent from Gonzales's live pleading, she has not alleged any contemporaneous negligent activity that caused her injury. Instead, she alleged that she slipped and fell on a substance on the floor. Accordingly, Gonzales's negligence claim arising from her slip-and-fall is properly characterized as a premises-defect claim. *See Sampson*, 500 S.W.3d at 390-91; *Woodkins*, 2017 WL 2367515, at *4; *Rogge*, 506 S.W.3d at 575.

Gonzales asserts that a slip-and-fall case such as hers "can be both a negligent activity and a premises defect claim." As she states, "[i]t is possible and in fact likely that Appellee's injuries were caused by both a failure to keep the premises safe and the negligent activity of a spill on the premises." In support, she cites *Austin v. Kroger Tex., L.P.*, and quotes the following statement from that case:

> When an injury arises from a premises condition, it is often the case that any resulting claim sounds exclusively in premises liability, but that is not necessarily the case. An injury can have more than one proximate cause. The fact that Austin alleged that a condition of the premises proximately caused his injury does not preclude his allegation that Kroger's negligent failure to provide the Spill Magic system also caused his injury.

*Austin*, 465 S.W.3d at 216 (internal citations omitted). While Gonzales accurately quotes *Austin*, that case is inapplicable because it considered duties arising in the employer-employee context, which is not at issue here. *See id*. at 215-16 (addressing "the interaction between premises-liability claims and an employer's other general negligence duties."). As the *Austin* court acknowledged: "If the only relationship

9

between Austin and Kroger were that of landowner-invitee, the alleged facts could only give rise to a premises-liability claim." *Id*. at 216.

We conclude that Gonzales's claim is properly classified as a premises-defect claim, and not one based on a negligent activity. This is not a case in which liability and the asserted waiver of immunity is predicated upon any "affirmative, contemporaneous conduct" by the City's employees,[4] but instead depends upon ordinary premises-defect principles applicable to an allegedly unreasonably dangerous condition. *See Sampson*, 500 S.W.3d at 385-86, 390-91; *Woodkins*, 2017 WL 2367515, at *4; *Rogge*, 506 S.W.3d at 575.

2.    *The City established that it did not control the area where Gonzales was injured.*

Gonzales asserted in her live pleading that the City "owned, occupied and/or controlled" the area where she was injured. In its jurisdictional plea, however, the City maintained that the area where Gonzales slipped and fell was leased to United Airlines and the City did not retain any control over the premises. This purported lack of control over the area where Gonzales's accident occurred was the only basis asserted in the City's jurisdictional plea.[5]

First, we note that the TTCA does not create new duties, but simply waives immunity for the instances specified in the statute. *City of Denton v. Page*, 701 S.W.2d 831, 834 (Tex. 1986). Accordingly, the City is immune from suit unless

---

[4] *See Rogge*, 506 S.W.3d at 575 (citing *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)).

[5] We appreciate Gonzales's frustration with the City's failure to provide the lease sooner than it did, especially in light of her discovery requests for information regarding other parties that might bear responsibility. Nonetheless, subject-matter jurisdiction may be raised at any time. *See Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 445).

Gonzales can show that it owed her a legal duty and breached that duty under circumstances falling within the TTCA's waiver of immunity. *See id.*

Generally, a landlord owes no duty to tenants or their invitees for dangerous conditions on the leased premises. *See Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996); *Brownsville Navigation Dist. v. Izagirre*, 829 S.W.2d 159, 160 (Tex. 1992); *McDonald v. City of the Colony*, No. 02-08-263-CV, 2009 WL 1815648, at *8 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op.); *see also Levesque v. Wilkins*, 57 S.W.3d 499, 505 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("When the lessor has no control over the premises, the lessor has no liability for injuries stemming from leased premises within the control of a tenant."). This rule applies when a lessor relinquishes possession of the premises to the lessee. *See Johnson Cty. Sheriff's Posse*, 926 S.W.2d at 285. The rule does not apply, however, when an injury arises from a defect on a portion of the premises that remains under the lessor's control. *See id.*

As evidence in support of its jurisdictional plea, the City attached and referenced a copy of a lease agreement, the "Terminal C South Net Lease and Use Agreement," between it and United Airlines, as well as Gonzales's answers to its first set of interrogatories. In her answers, Gonzales stated that she slipped and fell on the floor at a restaurant's salad bar, which was located in Terminal C.[6] The lease term is from April 10, 2015, to December 31, 2037. The accident occurred in May 2016.

The lease agreement contained the following key provisions:

City hereby leases to United for its *exclusive use the areas in Terminal C South* [shown in Exhibit 4.01].[7]

---

[6] Gonzales acknowledged that the accident occurred in the "Terminal C South" concourse.

[7] We reproduce this exhibit in an Appendix to this opinion.

City may enter upon the Leased Premises . . . at any time for any purpose necessary, incidental to or connected with the performance of United's obligations hereunder or the City's obligations hereunder, *upon no less than twenty-four (24) hours' prior notice . . . except in cases of emergency and . . . upon the termination or cancellation of this Agreement. . . .*

Subject to the terms of this Agreement, *United shall have the right of quiet enjoyment with respect to the Leased Premises* during the term of this Agreement.

Subject to the other terms of this Agreement, from July 1, 2015 and continuing throughout the term of this Agreement,[8] United *shall assume the entire responsibility, cost and expense for operation and all repair and maintenance of Terminal C South . . . . United shall: [m]aintain at all times Terminal C South . . . in a good state of repair and preservation[;] keep at all times, in a clean and orderly condition and appearance, any areas in Terminal C South . . . which are open to or visible to the general public.*

(Emphases added). Based on this evidence, the City urged that it neither owed nor breached a duty to Gonzales because United Airlines controls, maintains, operates, and cleans Terminal C South. Consequently, the City argues that because it cannot be liable were it a private person, it is immune from Gonzales's claims. *See* Tex. Civ. Prac. & Rem. Code § 101.021(2).

Gonzales argues that the City retains control over several aspects of the leased premises, pointing to the lease's section 8.01, "Obligations of City":

The City shall throughout the term of this Agreement assume the entire responsibility for the operation and all repair and maintenance of the items listed in Exhibit 8.01, attached hereto, whether such repair or maintenance be ordinary or extraordinary, structural or otherwise. The City shall perform its maintenance, repair and replacement obligations in a timely and good and workmanlike manner. . . .

---

[8] The lease is to expire on December 31, 2037, "or as may be modified by an amendment of this Agreement."

Exhibit 8.01 lists the following systems or equipment that the City reserved to itself for maintenance:

- Communications Equipment Rooms (incl MDF/IDF/Telco) used for City equipment

- UPS in Terminal C Basement

- Chilled and High Temperature Water Pump Rooms

- Electrical Switch Gears before the meters

- Terminal C Parking Garage to include C-East, C-Central and C West Garages

- Roadway Signage Leading to Terminal C

- Monitoring of Fire System in Terminal A to monitor Terminal C fire alarms and panels

- APM [Automated People Mover]

- APM Platform and/or Tunnels

- Inter Terminal Train (ITT) - ITT Level and associated train system controls and stations

- ITT Tunnel

- APM Station Lighting

- APM Station Escalators and Elevators

- APM Central Control Room and Related Offices

- Public Address System

- City of Houston FIDS

- HAS [Houston Airport System] Technology Cabling Infrastructure

- HAS Data Networking Equipment

- HAS Passenger Wait Time Technology

- HAS Courtesy Phones and Kiosks

- HAS Radio and DAS Equipment

- HAS security surveillance equipment

- HAS security access control system

- HAS phone systems and shared tenant technology services
- Any items mutually agreed to in writing by United and the Director

However, Gonzales did not allege that she was injured while using any of these systems or equipment. She instead was injured when she slipped and fell at a restaurant in the Terminal C South concourse, an area that is "open to the public" and over which, according to the lease, United Airlines assumed the entire responsibility and expense for operation, maintenance, and cleanliness.

Accordingly, the evidence before the trial court in connection with the City's jurisdictional plea established that the City retained no control over the leased premises, including the area where the incident occurred. Gonzales did not present any evidence contradicting the City's evidence or otherwise raising a fact question on the issue of control of the leased premises. As such, the City established that it owed no duty to Gonzales. *See, e.g.*, *Endsley*, 926 S.W.2d at 285-86 (holding that owner of arena where a barrel racing event was held was not liable to spectator who was injured during event when owner established that it leased the arena to another party and did not retain any control over the premises); *Levesque*, 57 S.W.3d at 505. Because the City established that it owed Gonzales no duty, the City retained its governmental immunity from suit. *See Page*, 701 S.W.2d at 834; *see also* Tex. Civ. Prac. & Rem. Code § 101.021(2).

We sustain the City's sole appellate issue.

## Conclusion

The trial court lacked subject-matter jurisdiction to hear Gonzales's claim against the City, and we therefore reverse the order denying the City's plea to the jurisdiction. However, because the record does not indicate that the trial court disposed of Gonzales's motion for sanctions against the City, we remand the case to the district court with instructions to dismiss Gonzales's suit against the City for lack

14

of subject-matter jurisdiction after disposing of Gonzales's motion for sanctions. *See Holcomb v. Waller Cty.*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *First State Bank of Cent. Tex. v. Lakeway Reg'l Med. Ctr.*, No. 03-13-00058-CV, 2014 WL 709221, at *6 (Tex. App.—Austin Feb. 20, 2014, pet. denied) (mem. op.) (court may consider sanctions even though subject-matter jurisdiction found wanting); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 138-39 (1992).

/s/ Kevin Jewell
   Justice

Panel consists of Justices Jewell, Bourliot, and Hassan.

# Appendix – Exhibit 4.01





This area is part of Terminal C North. However, HAS is to provide and maintain loading dock and stairwell at all times in this area and UA shall have the right in common with others to use such area.

**Legend**

Loading Dock / Stairwell - HAS to Provide & Maintain / UA to use in common with others

Terminal C South - Exclusive Leased Premises

Terminal C South Apron - Preferential Leased Premises

George Bush Intercontinental Airport
Houston, TX

**Terminal C South - Apron Level**

NTS

Exhibit
**4.01**
Page 2 of 2

PROJ MGR: HAS Properties Dept.
DATE: 3/19/2015
CREATED BY: Brett Redman
CHECK BY: HAS Properties Dept.
PRINT DATE: 3/25/2015

17